**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL C. EVANS, in his capacity
as Chairman of the Snohomish
Tribe of Indians; SNOHOMISH TRIBE
OF INDIANS,
              *Plaintiffs-Appellees,*

TULALIP TRIBES OF THE TULALIP
RESERVATION,
        *Plaintiff-Intervenor-Appellant,*

              v.

UNITED STATES DEPARTMENT OF
INTERIOR; BUREAU OF INDIAN
AFFAIRS; OFFICE OF FEDERAL
ACKNOWLEDGMENT; UNITED STATES
OF AMERICA; KEN SALAZAR,
                  *Defendants.*

No. 08-35938

D.C. No.
2:08-cv-00372-JCC

OPINION

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued June 3, 2009
Submitted March 15, 2010
Seattle, Washington

Filed May 13, 2010

Before: William C. Canby, Jr., David R. Thompson, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Canby

## COUNSEL

James H. Jones, Jr., Bell & Ingram, P.S., Everett, Washington, for plaintiff-intervenor-appellant Tulalip Tribes.

Alexandra K. Smith, John S. Devlin, III, Lane Powell, PC, Seattle, Washington, for plaintiffs-appellees Evans.

## OPINION

CANBY, Circuit Judge:

This is an appeal by the Tulalip Tribes of the Tulalip Reservation ("Tulalip Tribes") from an order of the district court denying the Tulalip Tribes the right to intervene in an action brought by the Snohomish Tribe of Indians and Michael C. Evans as its Chairman (collectively, "Snohomish Tribe") to achieve federal recognition of the Snohomish Tribe. Decision in this appeal was stayed pending the outcome of our en banc hearing in *United States v. Washington*, 593 F.3d 790 (9th Cir. 2010) (en banc) ("*Samish*"). Having now reviewed supplemental briefing on the effect of *Samish* on this appeal, we affirm the order of the district court denying intervention by the Tulalip Tribes.

## JURISDICTION AND STANDARD OF REVIEW

A district court's denial of intervention as a matter of right is appealable as a final order under 28 U.S.C. § 1291. *See United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002). We review de novo the district court's denial of a motion for intervention as of right. *See Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

## BACKGROUND

In 2003, the federal government denied recognition (now known as "acknowledgment") of the Snohomish Tribe. *See* Final Determination Against Federal Acknowledgment of the Snohomish Tribe of Indians, 68 Fed. Reg. 68,942-01 (Dec. 10, 2003). The Snohomish Tribe then brought an action in the district court seeking to overturn the adverse administrative decision and establish the Tribe's right to recognition. The Tulalip Tribes filed a motion to intervene in the recognition lawsuit for the limited purpose of bringing a motion to dismiss for lack of an "indispensable" party (the Tulalip Tribes).[1] The district court denied the motion to intervene, holding that the Tulalip Tribes had "failed to identify a protectable interest sufficient to invoke intervention as of right under Federal Rule of Civil Procedure 24(a)." The district court relied on our decisions in *Greene v. United States*, 996 F.2d 973 (9th Cir. 1993) ("*Greene I*"), and *Greene v. Babbitt*, 64 F.3d 1266 (9th Cir. 1995) ("*Greene II*"), in which we upheld the denial of intervention of the Tulalip Tribes in the Samish Tribe's recognition proceedings.

## DISCUSSION

The grounds urged in the present case by the Tulalip Tribes in its motion to intervene arose from the history of tribal treaty fishing rights in the Pacific Northwest.[2] Treaty fishing rights of several tribes (including the Tulalip Tribes)[3] were

---

[1]Federal Rule of Civil Procedure 19 no longer refers to "indispensable" parties. The thrust, however, of the Tulalip Tribes' proposed motion to dismiss was that they were a "required" party that, because of its sovereign immunity, could not be joined against its will, and that "in equity and good conscience" the proceeding should be dismissed in its absence. Fed. R. Civ. P. 19(b).

[2]This history has been recounted many times, most recently in condensed form in our en banc decision in *Samish*, 593 F.3d at 793-97.

[3]The Tulalip Tribes were included in *Washington I* by a supplemental finding of fact entered in that litigation in 1975, finding the Tulalip Tribes to be successors to the treaty rights of certain treaty signatories. *See United States v. Washington*, 459 F. Supp. 1020, 1039 (W.D. Wash. 1978) (compiling additional orders entered by the district court).

upheld in the seminal decision of *United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974) ("*Washington I*"), *aff'd*, 520 F.2d 676 (9th Cir. 1975). Shortly thereafter, four tribes, including the unrecognized Snohomish and Samish, intervened in that litigation to secure their own treaty rights. All four tribes were denied treaty fishing rights. *See United States v. Washington*, 476 F. Supp. 1101 (W.D. Wash. 1979) ("*Washington II*"), *aff'd*, 641 F.2d 1368 (9th Cir. 1981). Like the other three tribes, the Snohomish Tribe was held not to be "an entity that is descended from any of the tribal entities that were signatory to the Treaty of Point Elliott" and was found not to have lived "as a continuous separate, distinct and cohesive Indian cultural or political community." *Id.* at 1107.

In seeking to intervene in the present Snohomish recognition proceeding, the Tulalip Tribes argued that recognition of the Snohomish Tribe would threaten the existing treaty rights of the Tulalip Tribes. Its fears had some substance at the time they were asserted because the Samish Tribe, after it belatedly achieved federal recognition, appeared to succeed in using the fact of recognition to reopen the denial of its treaty rights in *Washington II*. *See United States v. Washington*, 394 F.3d 1152 (9th Cir. 2005) ("*Washington III*"), *overruled by Samish*, 593 F.3d at 799.

**[1]** The problem presented by the Tulalip Tribes in seeking to intervene is precisely the problem we addressed in our en banc decision in *Samish*, and the position of the Tulalip Tribes in this litigation is not materially different from their position in the *Samish* litigation. At this point in the present litigation we are simply part way through a re-play of the *Samish* scenario.

As here, the Tulalip Tribes were denied intervention in the Samish recognition proceedings on the ground that recognition could have no effect on treaty rights. *Greene II*, 64 F.3d at 1270-71; *Greene I*, 996 F.2d at 976-77. The Samish then obtained a favorable decision in our court permitting reopen-

ing of the denial of their treaty rights on the strength of their new recognition. *Washington III*, 394 F.3d at 1161. That decision conflicted with the earlier denial of Tulalip intervention, and precipitated our en banc decision in *Samish*.

**[2]** In *Samish*, we overruled *Washington III*, making it clear that the Tulalip Tribes were correctly denied intervention in the Samish recognition litigation and must be denied intervention here. In interring *Washington III*, we made it perfectly clear that thereafter recognition can have no effect on treaty rights. We held that a tribe seeking to establish treaty rights not previously adjudicated was free to attempt to intervene in the *Washington* treaty litigation, but "it cannot rely on a preclusive effect arising from the mere fact of recognition . . . . Indeed . . . the fact of recognition cannot be given even presumptive weight in subsequent treaty litigation." 593 F.3d at 800. Recognition of the Snohomish Tribe, if it occurs, therefore can have no effect on its own treaty rights or the treaty rights of the Tulalip Tribes.

The Tulalip Tribes in their supplemental brief attempt to distinguish *Samish* because there the district court, in denying intervention, had stricken all reference to treaty rights from the recognition complaint and directed that any administrative proceedings that it ordered would not deal with treaty rights. Here, in contrast, the recognition complaint of the Snohomish recites that the Snohomish Tribe is descended from a treaty party. The district court properly observed, however, that treaty rights are no part of the relief sought by the Snohomish Tribe in its recognition proceedings; the Tribe seeks only an adjudication that the denial of recognition violated the Administrative Procedure Act, due process, and equal protection. Moreover, *Samish* itself establishes that recognition rulings or adjudication can have no effect in the establishment of treaty rights of the recognized tribe. Whether or not the Snohomish complaint recites the Tribe's alleged descent from a treaty signatory, the Tribe's recognition can be given no effect

in subsequent attempts to establish treaty rights. *See id.* at 800-01.

In its supplemental briefing, the Tulalip Tribes also argue that, even if recognition of the Snohomish can have no effect in establishing Snohomish treaty fishing rights, recognition will threaten the "political successorship[,] sovereignty . . . and cultural identity of the Tulalip Tribes." The asserted reason is that the Tulalip Tribes were found in *Washington I* to be the successors of Snohomish Indians who were parties to the treaty.

We fail to see how recognition of the Snohomish Tribe as a distinct historical entity can intrude upon the established recognition of the Tulalip Tribes as successors to treaty signatories. Any effective intrusion would constitute an interference, by reason of recognition, in the Tulalip Tribes' adjudicated treaty rights, an outcome forbidden by *Samish*. As for the sovereignty and cultural identity of the Tulalip Tribes, those valuable attributes remain in the Tulalip Tribes wholly independent of any recognition or non-recognition of the Snohomish Tribe. Mere distaste for Snohomish recognition does not qualify for intervention as "an interest relating to the property or transaction that is the subject of the action, . . . so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . . " Fed. R. Civ. P. 24(a)(2).

**[3]** In *Samish* we said that "[t]here are good reasons for adhering to the rule that treaty tribes are not entitled to intervene in recognition decisions to protect against possible future assertions of treaty rights by the newly recognized tribe . . . ." *Samish*, 593 F.3d at 801. One reason was that recognition served many valuable purposes other than treaty rights, and intervention "has the potential to interfere unnecessarily with a tribe's establishing its entitlement to recognition because of the speculative possibility that some administrative finding might have an impact on future treaty litigation." *Id.* This case

furnishes a prime example: the Tulalip Tribes seek to intervene in the Snohomish recognition proceeding only to stop it in its tracks for lack of a required party. The purpose of our *Samish* decision was to avoid such unnecessary disruption of recognition proceedings.[4]

## CONCLUSION

The order of the district court denying intervention is

**AFFIRMED.**

---

[4]We express no opinion, of course, on the ultimate merits of the Snohomish Tribe's claim for recognition.